# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2200

_____

James Seitz,

      Plaintiff - Appellant,

v.

Metropolitan Life Insurance Company;
Merck & Co., Inc., Medical, Dental,
and Long-Term Disability Program for
Non-Union Employees,

      Defendants - Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Northern
District of Iowa.

_____

Submitted:  December 2, 2005
Filed: January 10, 2006

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

The district court granted summary judgment for the defendants regarding their denial of the plaintiff's claim for disability benefits.  We reverse and remand.

## I. Background

James Seitz was a Senior Professional Sales Representative for Merck & Co., Inc. ("Merck"). While working at Merck, Seitz was diagnosed with spinal impairments including spondylosis and degenerative disc disease as well as depression.[1] When his neck and back injuries progressed, Seitz applied for long-term disability benefits under Merck's Medical, Dental, and Long-Term Disability Program for Non-Union Employees (the "Plan"). Metropolitan Life Insurance Company ("MetLife"), Merck's third party disability benefits administrator, refused to approve payment to Seitz.

Seitz began to suffer from back pain in 1983. In April 2001, he received a letter from his treating physician, Dr. Ernest M. Found. Dr. Found stated that upper back and neck pain resulting from spinal surgeries rendered Seitz incapable of sitting for long periods or doing more than very occasional reaching, lifting, or working overhead. On September 12, 2001, Dr. Found again documented Seitz's physical limitations, this time in the form of a "physical capacity evaluation." Dr. Found reported that Seitz was unable to sit, stand, walk, bend, climb, crawl, reach, kneel, squat, twist, push/pull, grasp or drive in excess of two hours a day. Seitz continued to work until January 29, 2002. Shortly before leaving his job, Seitz drove from Dubuque, Iowa, to Chicago, Illinois, to attend a job training session. The sitting during the drive to the session and/or during the session aggravated his condition.

On May 24, 2002, at MetLife's behest, Merck business manager Candace Hodge completed a description worksheet for Seitz's job. Hodge reported that a normal work day for Seitz required him to sit for five to six hours, stand for one to

---

[1] Because we find that Seitz's neck and back injuries rendered him totally disabled–pursuant to the Plan's definition–and thus entitled to benefits, we need not discuss the specifics of his depression or any other psychiatric issues.

two hours, and engage in extensive walking, bending, twisting, reaching above shoulder level, crouching/stooping, kneeling, balancing, pushing and pulling.

On May 29, 2002, Seitz submitted a claim for benefits to the Plan. Under the terms of the Summary Plan Description ("SPD"), an individual is eligible for Long Term Disability benefits after that person has been "totally disabled" for the duration of the Eligibility Period. The SPD has the following description of "totally disabled":

> Totally disabled means you are unable to perform all material aspects of your occupation during the Eligibility Period and during the first 24 consecutive months that benefits are paid under the Long-Term Disability Plan. After the first 24 consecutive months of disability, you must be unable to engage in any Gainful Employment for which you are or may become reasonably qualified by education, training or experience.
>
> You must be under the regular care of a licensed doctor to be considered totally disabled. The doctor must also have appropriate expertise for your disability and you must follow the prescribed course of treatment.

The Eligibility Period is separately defined as: "[a] consecutive 26-week period for which you have been continuously totally disabled."

The SPD grants the Plan Administrator the discretion to construe and interpret the provisions of the Plan; make factual determinations; decide all questions of eligibility for benefits; resolve issues arising in the administration, interpretation, and/or application of the Plan; correct any defects; reconcile any inconsistencies; and supply any omissions with respect to the Plan.

On August 8, 2002, MetLife denied Seitz's claim. MetLife's denial letter stated that Seitz's medical documentation did not support an impairment severe enough to preclude him from returning to his own occupation during the Eligibility Period which began when Seitz ceased working on January 29, 2002. Seitz underwent additional

-3-

diagnostic testing and then appealed MetLife's decision on October 3, 2002. Seitz was evaluated by another doctor, E. Richard Blonsky, on October 14, 2002. Dr. Blonsky reported that Seitz's "physical condition prohibits him from performing the activities of his job." Seitz submitted Dr. Blonsky's report to MetLife along with reports of other doctors and a finding by the Social Security Administration that Seitz qualified for disability benefits.

MetLife requested an Independent Medical Examination and notified Seitz of this request in a letter dated December 16, 2002. Seitz's claim file was sent to Dr. M. Barry Lipson. Dr. Lipson filed a report in which he agreed with the limitations on Seitz set forth by Dr. Found. Dr. Lipson also said that work activities would exacerbate Seitz's condition and render him "incapable of performing the essential duties of his job."

On February 5, 2003, Seitz commenced this action in the United States District Court for the Northern District of Illinois seeking the recovery of disability benefits from an ERISA-governed employee benefit plan pursuant to 29 U.S.C. § 1132(a)(1)(B). MetLife denied Seitz's appeal for benefits the next day. The letter denying Seitz's appeal stated in part:

> We do not dispute your client's diagnosis or complaints. However, as indicated in the [P]lan, to be considered totally disabled, a claimant must have continuously been unable to perform all material aspects of his occupation, not necessarily his own job . . . from January 29, 2002 through July 30, 2002. Dr. Found repeatedly indicated . . . that your client was capable of light work with restrictions . . . . There is no indication throughout the documentation from Dr. Found that Mr. Seitz was informed to cease working as of January 29, 2002.

On December 22, 2003, Seitz's case was transferred to the Northern District of Iowa. On March 30, 2005, the district court granted MetLife's motion for summary judgment and denied Seitz's motion for summary judgment.

## II. Standard of Review

We review de novo the district court's determination of the standard of review applicable to MetLife's denial of benefits. Torres v. UNUM Life Ins. Co. of America, 405 F.3d 670, 677 (8th Cir. 2005). Because the Plan gives MetLife the discretionary authority to determine eligibility for benefits, we find that the district court correctly reviewed MetLife's eligibility determination for abuse of discretion. Jackson v. Metro. Life Ins. Co., 303 F.3d 884, 887 (8th Cir. 2002). We also engage in de novo review of the district court's application of the abuse of discretion standard. Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001). Under the abuse of discretion standard, we will not disturb an administrator's decision if the administrator makes a reasonable interpretation of uncertain terms in a policy, and the decision based on that interpretation is supported by substantial evidence. King v. Hartford Life and Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005).

## III. Discussion

## A. The Benefits Claim

MetLife's letter denying Seitz's appeal for long-term disability benefits stated that "a claimant must have continuously been unable to perform all material aspects of his occupation, not necessarily his own job, for 26 consecutive weeks."[2] The only description of Seitz's occupation that is before us is the description of Seitz's job created by Candace Hodge. This description stated that during a normal workday Seitz was required to sit for five to six hours. Every doctor that examined Seitz,

---

[2] The letter rejecting Seitz's appeal also notes that he was not under the regular care of an appropriate doctor, but the district court rejected this requirement of the Plan because there was no evidence that additional visits to a doctor would have improved Seitz's condition. MetLife does not appeal this determination, and, as such, we need not address it.

including the independent examiner chosen by MetLife, agreed that Seitz was limited to sitting for no more than two hours during the day. Thus, Seitz was physically unable to fulfill at least one material aspect of his job.

MetLife does not dispute that Seitz was limited to sitting only two hours a day. Metlife instead argues that, despite the limitation on sitting, Seitz does not meet the Plan's definition of "totally disabled." The district court stated that MetLife's argument is that Seitz is not totally disabled because he can do *some* of the material aspects of his job. In its brief, MetLife argues that Seitz is not totally disabled because he can do *all* of the material aspects of his job, albeit to a limited degree. We reject both of these arguments.

We have previously held that when a Plan uses an individual's own occupation to determine whether he or she is totally disabled, being able to perform *some* job duties is insufficient to deny benefits. See Dowdle v. Nat'l Life Ins. Co., 407 F.3d 967, 971-72 (8th Cir. 2005) (applying Minnesota law and affirming a grant of summary judgment awarding disability benefits to a surgeon who could perform some functions of his occupation but could no longer operate on patients); see also Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Plan, 85 F.3d 455, 458 (9th Cir. 1996) (rejecting the insurer's position that a claimant "is not totally disabled if she can perform any single duty of her job, no matter how trivial . . . as 'total disability' would only exist if the person were essentially non-conscious."). We also find unreasonable an interpretation of the Plan that would deny benefits when a claimant is able to perform all material aspects of his job for some limited period of time. See McFarland v. Gen. Am. Life Ins. Co., 149 F.3d 583, 588 (7th Cir. 1998) (holding that a claimant can be totally disabled when "an injury or sickness would not physically prevent an employee from performing any given task, but the injury instead renders the person unable to perform enough of the tasks or to perform for a long enough period to continue working at his regular occupation."). Seitz's job required him to sit for five to six hours per day. Sitting for up to two hours does not fulfill that

material aspect of the job. Furthermore, these interpretations are not "consistent with the goals of the Plan" which are "to provide an umbrella of financial protection for [employees] and [their] famil[ies] against substantial economic loss as well as provide a level of economic security." Torres, 405 F.3d at 680 (stating that one of the factors to be considered in determining if there has been an abuse of discretion is "whether the administrator's interpretation is consistent with the goals of the Plan").

MetLife asserted two additional rationales as to why it should be allowed to deny Seitz's benefits. MetLife argued that Seitz was not totally disabled because he continued to work after his spinal problems were diagnosed and his condition did not significantly change between the time of the diagnosis and the day he quit working and sought benefits. We reject this argument because there is no dispute that Seitz's physical abilities were limited at the time he quit working. Thus, adopting MetLife's position would unfairly punish individuals who test their limitations and attempt to keep working before seeking benefits. MetLife also asserted that Seitz exacerbated his condition by attending an out-of-town job training session. The record is unclear as to whether Seitz was required to attend this session, but, even if his attendance was voluntary, it does not affect our analysis. Nothing in the Plan language requires Seitz to have been injured during the course of his employment. As such, the cause of any aggravation to his condition is immaterial.

Because we reject MetLife's stated reasons for denying benefits, and because there are no outstanding questions of fact regarding Seitz's medical condition, we find that Seitz is entitled to summary judgment granting benefits under the Plan.

B. Interest on the Judgment

Seitz also requests prejudgment interest on the past due benefits. We find that the benefits were wrongfully delayed, and, thus, prejudgment interest is appropriate as equitable relief under 29 U.S.C. § 1132(a)(3)(B). Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1009 (8th Cir. 2004).

C. Attorneys' Fees

Seitz also requests an award of his attorneys' fees. The factors to be used in considering such a request are:

(1) the degree of culpability or bad faith of the opposing party;
(2) the ability of the opposing party to pay attorney fees;
(3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances;
(4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
(5) the relative merits of the parties' positions.

Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966, 969 n.4 (8th Cir. 2002). Although we disagree with MetLife's interpretation of the Plan's language, we do not find their interpretation to be without merit or a demonstration of bad faith. We also do not believe the other factors to be of great weight in this case. Accordingly, we deny Seitz's request for attorneys' fees.

III. Conclusion

For the foregoing reasons, we reverse the grant of summary judgment for MetLife and remand for entry of a judgment consistent with this opinion.

_____