# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1905

_____

Gary Rittenhouse,

        Appellee,

v.

UnitedHealth Group Long Term
Disability Insurance Plan,

        Appellant.

Appeal from the United States
District Court for the District
of Nebraska.

_____

Submitted: November 14, 2006
Filed: February 21, 2007

_____

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Gary H. Rittenhouse filed for benefits with UnitedHealth Group Long Term Disability Insurance Plan (UnitedHealth), which is insured by a policy from AIG Life Insurance Company. The plan, purchased by his employer, is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. After AIG denied his claim and appeal, Rittenhouse sued under 29 U.S.C. § 1132. On cross-motions for summary judgment, the district court granted Rittenhouse's and denied UnitedHealth's, awarding him attorney's fees and costs of action, per 29 U.S.C. § 1132(g). UnitedHealth appeals. This court reverses and remands.

Rittenhouse began losing his hearing in the late 1980s. Tests by Dr. Roger Mc Gargill in August 2002 showed that Rittenhouse had 76% word recognition in his right ear and 84% in his left ear. Rittenhouse's physician, Dr. Patrick J. McCarville, referred him to Dr. Britt A. Thedinger, a specialist, who tested him on April 30. These tests showed 100% word recognition in the right ear and 92% in the left. Nonetheless, Dr. Thedinger described Rittenhouse's hearing loss as "moderate to severe," predicting it "will continue to slowly deteriorate." Dr. Thedinger concluded that Rittenhouse is "totally disabled" and could "never" return to work. After a general physical on May 30, Dr. McCarville described his hearing loss as "very severe." Dr. Thedinger examined him on July 1 (his last day of work), finding "no change" since April.

Rittenhouse began as Vice President of Business Development for a subsidiary of UnitedHealth Group in July 2000. After overseeing the elimination of his unit, he was laid off on July 2, 2003. On October 15, Rittenhouse submitted a claim for long-term disability benefits to AIG. Drs. McCarville and Thedinger signed Attending Physician's Statements that he is "totally disabled." AIG also received a letter and statement from Dr. Mc Gargill. He opined that a person in Rittenhouse's condition would "have difficulty hearing on the phone," as well as "hearing and understanding speech at a distance of more than 5 to 10 feet and not having the speaker face him . . . when the speaker is speaking in a normal voice." Dr. Mc Gargill noted that even with hearing aids Rittenhouse "still has difficulty in the presence of any background noise," on the phone, and especially with women. He added that this "difficulty is compounded when he is not able to see the speaker's face" and cannot lipread. Nevertheless, Dr. Mc Gargill indicated on the statement that Rittenhouse is *not* "totally disabled."

Dr. Rick Snyder, a medical consultant AIG hired to review the claim, spoke with Dr. Thedinger in March 2004. In a letter summarizing the conversation, Dr.

Thedinger agreed that Rittenhouse has "excellent speech discrimination" overall, and that "with appropriate accommodations, he should function at a level that would allow him to perform his occupational duties." AIG denied Rittenhouse's claim on April 2, deciding that he is not disabled under the policy.

Promptly appealing, Rittenhouse submitted: a personal statement; a disability waiver for charges from his life insurance company stating that he is "totally disabled"; a letter from the Social Security Administration denying his claim for disability benefits, but acknowledging that "your condition prevents you from doing your past job"; and, the results of another hearing test from June 2004. He offered to undergo more tests, but AIG never acted on this offer. Dr. Robert Levine reviewed the entire file for AIG, concluding, "as of July 2, 2003, there were no changes in the claimant's condition that would prevent him from continuing to perform the essential duties of his occupation as a vice president for business development." Based on this report, AIG denied Rittenhouse's appeal on August 26. AIG told him its decision was "final" and a lawsuit was his only recourse. Over the next five months Rittenhouse sent AIG additional documents, repeatedly requesting his file be re-opened. AIG refused to consider the documents or re-open the file. Rittenhouse sued in May 2005.

This case presents several issues: the correct standard of review in the district court; the admissibility of the documents Rittenhouse produced after his appeal was denied; the motions for summary judgment; and, the award of attorney's fees.

## II.

The district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility determinations, when review is for abuse of discretion. *See King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc). Here, the district court reviewed AIG's decision de novo, because the court did not

find "the explicit discretion-granting language necessary to require a heightened standard of review." *See McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 793 (8th Cir. 2003) ("We require 'explicit discretion-granting language' in the policy or in other plan documents to trigger the ERISA deferential standard of review."). This court reviews de novo the district court's determination of the standard of review. *See Farley v. Ark. Blue Cross & Blue Shield*, 147 F.3d 774, 776 (8th Cir. 1998).

Rittenhouse argues that discretion cannot be granted to AIG because the record does not establish that it is the administrator. ERISA requires administrators periodically to furnish beneficiaries with a Summary Plan Description (SPD). **29 U.S.C. §§ 1022, 1024(b)**. UnitedHealth refers to a 600-page SPD that includes the full insurance policy, a "Benefits Handbook," and an "Integrated Disability Management Agreement." The district court declined to consider these documents, discounting them as "unreliable." Even if the court had considered the handbook and the management agreement, neither document is dispositive. The handbook identifies "UNUM" as the insurer and administrator, never referring to AIG. The management agreement, although apparently prepared for AIG and UnitedHealth, is not signed by either. Instead, the district court designated as the SPD a two-page "Statement of ERISA Rights." This document identifies "UnitedHealth Care Services, Inc." as the policyholder *and* the administrator, leading Rittenhouse to assert, "the Plan Administrator is UnitedHealth Care Services, Inc."

The insurance policy directs beneficiaries to submit their claims to AIG, which Rittenhouse did (on an AIG form). AIG alone adjudicated the claim from the beginning, over a ten-month period. The Attending Physician's Statements were made on AIG standard forms, and Rittenhouse's doctors forwarded his medical records to AIG, per AIG's request. Rittenhouse addressed all letters and supporting documents to AIG, and all correspondence to him came on AIG letterhead, signed by a representative of that company. He authorized the Social Security Administration to release benefits information to AIG. He never corresponded with "UnitedHealth Care

-4-

Services, Inc." He did request that an Employer's Statement "be completed and sent to AIG by UnitedHealth [Group]." It is clear from the whole record that AIG is the plan administrator.

The question remains whether AIG's decision should be reviewed for abuse of discretion. The insurance policy is rife with ambiguous language that UnitedHealth cites as evidence of a grant of authority to AIG. The policy says that long-term disability benefits will be paid when "we [AIG] determine that proof of your LTD claim is satisfactory". Because "it is relatively easy for an insurer to use unambiguous discretion-conferring language when its group policy will serve as an ERISA plan . . . a policy containing ambiguous claims submission language commonly used in non-ERISA contexts" is presumed not to confer discretion on the administrator. *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 840 (8th Cir. 2001).

The district court relied primarily on the SPD. But "the policy and the Summary Plan Description jointly constitute the Plan documents." *Ross v. Rail Car Am. Group Disability Income Plan*, 285 F.3d 735, 739 (8th Cir. 2002); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the *benefit plan* gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.") (emphasis added). The triggering language may appear in a plan document other than the SPD.

The policy – under the heading "Allocation of Authority" – states, "We [AIG] reserve full discretion and authority to manage the Group Policy, administer claims, and interpret all Group Policy terms and conditions." This triggers abuse-of-discretion review. *See McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1027 (8th Cir. 2000) (policy gave administrator "full discretion and authority to determine eligibility for benefits and to construe and interpret [its] terms and provisions."); *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 840 n.9 (8th

Cir. 2001) (plan gave Administrative Committee "the discretionary authority to interpret and construe the Plan, and decide all questions of eligibility of any Eligible Family Member to participate in the Plan or to receive benefits under it, its interpretation and decision to be final and conclusive."); *Shipley v. Ark. Blue Cross & Blue Shield*, 333 F.3d 898, 901 n.4 (8th Cir. 2003) (policy provided that "the Company acting on behalf of the Plan shall have authority and full discretion to determine all questions arising in connection with Employee's insurance benefits, including but not limited to eligibility, interpretation of Plan language, and findings of fact with regard to any such questions."); *McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 792 (8th Cir. 2003) (plan granted sponsor "full and exclusive authority to control and manage the Plan, to administer claims, and to interpret the Plan and resolve all questions arising in the administration, interpretation, and application of the plan.").

The entire policy was before the district court, but at summary judgment AIG focused on the various ambiguous phrases that do not grant discretion. On appeal, AIG repeatedly invokes the policy's explicit discretion-granting language. Generally, this court does not consider issues raised for the first time on appeal. *Snider v. United States*, 468 F.3d 500, 512 (8th Cir. 2006). But here, the issue whether the plan documents contain "explicit discretion-granting language" was before the district court. To the extent there is a new argument, it "is purely legal and requires no additional factual development". *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002); *see also Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1314 (8th Cir. 1991) (*quoting In re Osweiler*, 346 F.2d 617, 621 (C.C.P.A. 1965) ("The real question should be whether the new argument is such as to raise a new issue. . . . We think it would be in disharmony with one of the primary purposes of appellate review were we to refuse to consider each nuance or shift in approach urged by a party simply because it was not similarly urged below.")).

In sum, AIG's decision is reviewed for abuse of discretion.

## III.

In its August 2004 letter denying Rittenhouse's appeal, AIG wrote, "This is our final decision on your claim." The letter stated that Rittenhouse had exhausted his administrative remedies, concluding, "If you disagree with our decision on the claim, you have a right to bring a civil action under ERISA Section 502(a)." Retaining counsel, Rittenhouse pressed AIG to reconsider, and submitted: results of a September 2004 Speech-in-Noise hearing test; letters from Drs. McCarville, Thedinger, Mc Gargill, and a former superior at UnitedHealth. AIG refused these documents, stressing its decision was "final," that "no further review of Mr. Rittenhouse's claim will be conducted," and that he could bring a civil action. After three such refusals, Rittenhouse sued in May 2005.

Rittenhouse alleges an abuse of discretion in AIG's refusal of these relevant, probative documents. AIG responds it correctly ignored the documents because the August 2004 decision was final, and the district court abused *its* discretion by considering them.

In an ERISA benefits-denial case, a district court may consider evidence not in the administrative record "if the plaintiff shows good cause" for its omission. ***Brown v. Seitz Foods, Inc. Disability Benefit Plan***, 140 F.3d 1198, 1200 (8th Cir. 1998). But Rittenhouse makes no such showing here – he "offered and offers no explanation why he could not have timely provided" the doctors' letters, the letter from his superior, and the Speech-in-Noise hearing test to AIG before it decided his appeal. *See **id.*** The district court abused its discretion by considering these documents, which were not in the administrative record. *See **id.*** at 1201. The district court here should have "consider[ed] only the evidence that was before the administrator when the claim was denied." *See **Farley***, 147 F.3d at 777.

In *Weber v. St. Louis University*, 6 F.3d 558, 561 (8th Cir. 1993), this court held that "in the circumstances of the case before us," it was an abuse of discretion for the trial court "to refuse to receive additional evidence, on the question of the date of onset of Ms. Weber's disability."  But there the district court reviewed the administrator's decision de novo, and "the only materials currently in evidence as to the date of onset of Ms. Weber's disability are insufficient to sustain a verdict for either Ms. Weber or the university on the basis of anything except speculation." *Id.* Here, review is for abuse of discretion (section II).  On this standard of review, there is sufficient evidence to rule on the parties' cross-motions for summary judgment (section IV).

Rittenhouse argues that in *Brown* the new evidence was proffered for the first time after suit was filed, while here it was submitted to AIG before suit (but after the appeal was denied).  Rittenhouse notes that the policy itself does not state when a claim is final, arguing that AIG arbitrarily "bowed its neck, refused to review the evidence, and repeatedly told Rittenhouse his only alternative was to sue."

ERISA requires, "every employee benefit plan shall . . . afford *a* reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review . . . ."  **29 U.S.C. § 1133(2)** (emphasis added); *see also* **29 C.F.R. § 2560.503-1(h)(1)** ("every employee benefit plan shall establish and maintain a procedure by which a claimant shall have *a* reasonable opportunity to appeal an adverse benefit determination . . . .") (emphasis added).  More concretely, for a claims procedure to be considered "full and fair," an administrator must "provide claimants *the* opportunity to submit written comments, documents, records, and other information relating to the claim for benefits".  **29 C.F.R. § 2560.503-1(h)(2)(ii)** (emphasis added).

The singular form shows that ERISA's administrative appeal process is not indefinite.  Once the claimant has had a "full and fair review," the process is complete,

and the administrator may close the record and issue a final decision. *See Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1096 (8th Cir. 1992) ("the administrative [review] process must end at some point," i.e., after a "full and fair review").

AIG provided Rittenhouse with a full and fair review. More than four months elapsed between April 9 – when he appealed – and August 26 – when AIG notified him of its final decision. Rittenhouse offers no explanation for not providing all his evidence to AIG during this time. For its part, AIG regularly corresponded with Rittenhouse, acknowledging his letters and updating him on his appeal. AIG was justified in closing the administrative record when it did.

IV.

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); **Fed. R. Civ. P. 56(c)**. Here, the main factual issue is whether Rittenhouse is disabled under the plan's language:

> *Disability* or *Disabled* means our [AIG's] determination that a change in your functional capacity to work as a result of your Medical Condition while you are covered under the Group Policy and:
>
> During the Benefit Qualifying Period:
> prevents you from performing the Essential Functions of your Own Job with or without reasonable accommodation; and
> as a result you are unable to earn more than 80% of your Indexed Monthly Income.

> During the first 24 months of LTD Benefit payments:
> prevents you from performing the Essential Functions of your Regular Occupation or of a Reasonable Employment Option offered to you by the Employer; and
> as a result you are unable to earn more than 80% of your Indexed Monthly Income.
>
> After the first 24 months of LTD Benefit payments:
> prevents you from performing the Essential Functions of any Gainful Occupation; and
> as a result you are unable to earn more than 60% of your Indexed Monthly Income.

Rittenhouse contends that he was disabled while employed, and is entitled to long-term disability benefits. He attacks the Levine Report, which AIG used to deny his appeal. Rittenhouse cites the statements from Drs. Thedinger and McCarville that he is totally disabled. UnitedHealth responds that Dr. Thedinger retracted this statement by signing Dr. Snyder's letter; Rittenhouse labels Dr. Snyder "AIG's in-house osteopath." Rittenhouse notes that strong communication skills are among the "key work standards" in his job description, yet UnitedHealth ignored this fact when it denied his claim. UnitedHealth points to the April 2003 hearing test showing 100% word recognition in the right ear and 92% in the left; Rittenhouse replies that the test conditions were unrealistic. Rittenhouse states that he cannot get a new job because he is unable to communicate on the phone with prospective employers; UnitedHealth counters that he has no "objective evidence" for this claim.[1]

Even viewed in the light most favorable to Rittenhouse, the evidence does not show an abuse of discretion. AIG's decision is supported by substantial evidence, i.e.,

---

[1] Rittenhouse also argues that his late documents contradict the Levine Report. As discussed in section III, these documents are outside of the administrative record and may not be considered.

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McGee v. Reliance Std. Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004). A court may not substitute its own judgment for AIG's. *See id.* UnitedHealth, not Rittenhouse, is entitled to summary judgment.

Rittenhouse relies on *Seitz v. Metro. Life Ins. Co.*, 433 F.3d 647 (8th Cir. 2006). There, this court held, "when a Plan uses an individual's own occupation to determine whether he or she is totally disabled, being able to perform *some* job duties is insufficient to deny benefits." *Id.* at 651. To reject a claim for this reason alone "would unfairly punish individuals who test their limitations and attempt to keep working before seeking benefits." *Id.* Because there was "no dispute that Seitz's physical abilities were limited at the time he quit working," this court ordered summary judgment for Seitz. *Id.* at 651-52. *See also* **Dowdle v. Nat'l Life Ins. Co.**, 407 F.3d 967, 971-72 (8th Cir. 2005) (affirming summary judgment for a claimant who could perform some, but not all, of his duties). *Seitz* and *Dowdle* do not resolve this case, however, because here the parties dispute the extent and timing of Rittenhouse's hearing impairment, and AIG does not rely primarily on the fact that he continued to work until discharged.

V.

The district court awarded attorney's fees and costs to Rittenhouse, per 29 U.S.C. § 1132(g). "Because attorney's fees are normally awarded only to prevailing parties," this order is reversed. *See* **Kaiser Steel Corp. v. Mullins**, 455 U.S. 72, 89 n.14 (1982) (reversing an award of attorney's fees under ERISA when summary judgment was reversed).

-11-

## VI.

AIG's decision should be reviewed for abuse of discretion. AIG was entitled to disregard the documents Rittenhouse submitted after his appeal was denied. This court reverses the judgment of the district court (including the award of attorney's fees), and remands for entry of summary judgment for UnitedHealth.

_____