# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1224

_____

Robert D. Carr

*Plaintiff - Appellant*

v.

Anheuser-Busch Companies, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri

_____

Submitted: September 19, 2012
Filed: December 21, 2012
[Unpublished]

_____

Before MELLOY and BENTON, Circuit Judges, and BAKER,[1] District Judge.

_____

BAKER, District Judge.

_____

[1]The Honorable Kristine Gerhard Baker, United States District Court for the Eastern District of Arkansas, sitting by designation.

The district court[2] granted summary judgment in favor of defendant Anheuser-Busch Companies, Inc. ("Anheuser-Busch") regarding its denial of plaintiff Robert D. Carr's claim for severance benefits under an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"). Mr. Carr challenges the district court's grant of summary judgment and the district court's partial denial of a motion to compel. We affirm.

I.     Background

Mr. Carr worked for Anheuser-Busch for 25 years. He was terminated from employment on June 4, 2009. His job title at the time was Senior Manager, Accounting.

Anheuser-Bush is the plan sponsor of Severance Pay Plan No. 562 ("Plan"), which exists for the benefit of certain employees as set forth in the applicable Summary Plan Description ("SPD"). The Anheuser-Busch Companies, Inc., Severance Pay Program ("Program") is a severance program under the Plan for eligible salaried employees. The SPD for the Program describes the conditions that employees must meet to receive the Program benefits and provides general information about the Program.

Relevant to this appeal is the SPD's provision of benefits upon an "[i]nvoluntary separation from service due to unsatisfactory job performance for reasons other than willful misconduct." Anheuser-Busch concluded Mr. Carr was ineligible for benefits because he was terminated for violating company policy, which was deemed willful misconduct.

_____

[2]The Honorable Carol E. Jackson, United States District Court for the Eastern District of Missouri.

Anheuser-Busch was the Plan Sponsor, Plan Administrator, and would have to pay any benefits due to Mr. Carr under the Plan.

On June 25, 2009, Mr. Carr wrote a letter to Anheuser-Busch which he characterized as a formal request for severance benefits under the Program. He stated: "I strongly disagree with the reason articulated for my termination" and referred to the provisions "as outlined by the Severance Pay Program Summary Plan Description."

Mr. Carr's claim was handled by the Plan Administrator, Kathleen Boulicault, who was the Senior Director, Compensation & Relocation at the time, and was handled on appeal by Jeff Karrenbrock, who was the Vice President, Total Rewards at the time. Ms. Boulicault and Mr. Karrenbrock were both paid employees of Anheuser-Busch. During 2009, Mr. Karrenbrock also was a participant in an Anheuser-Busch bonus incentive program based in part on a goal of reducing Anheuser-Busch's labor costs. Mr. Karrenbrock received a bonus under this program for the 2009 fiscal year.

Ms. Boulicault issued a Notice of Claim Denial on July 1, 2009, that stated in part: "Under the current Anheuser-Busch Severance Pay Program, benefits are not payable if the actions leading to your termination are considered willful misconduct in violation of company policy. Because your actions were deemed as willful misconduct, you are not entitled to benefits under the Program."

Mr. Carr's attorneys sent an email to Ms. Boulicault requesting several pieces of information relating to Mr. Carr's termination, including a copy of the "company policy" referred to in Ms. Boulicault's letter and the "[s]pecific documents and evidence . . . which support the statement in your letter of July 1, 2009 that Mr. Carr's alleged actions were 'willful misconduct' . . . ." Mr. Carr's attorney also requested the names of all individuals who participated in the company investigation.

Ms. Boulicault responded by email explaining that the terms of the Severance Pay Program entitled Mr. Carr to those documents on which she had relied in making the decision to deny Mr. Carr's request for severance benefits and attaching for review a copy of the Employee Separation Report that indicated Mr. Carr was dismissed for violation of company policy. She did not furnish a copy of the requested company policy nor did she identify anyone who was involved in the investigation.

On August 27, 2009, Mr. Carr's attorneys sent a four-page appeal letter to Mr. Karrenbrock, challenging the denial of Mr. Carr's claim for severance benefits. The letter objected to Ms. Boulicault's handling of the claim, citing an alleged failure to provide the specific reasons for the denial, the failure to provide a copy of the company policy cited in her denial, and that the denial letter referred to "willful misconduct" in violation of company policy but "[n]o additional explanation or evidence was provided to support this decision." The letter included a detailed recitation of Mr. Carr's version of the events which led to termination.

In the letter, Mr. Carr explained that, in 25 years of service, he had never been reprimanded or accused of wrongdoing. Mr. Carr admitted that, on June 3, 2009, he went to the fourth floor of his building at work to look for a docking station to use with his office laptop computer. He observed a set of unused speakers he felt he could use in his office, placed the speakers in a box to carry them to his office, but did not remove the box from the fourth floor. Mr. Carr continued his search for a docking station when he was confronted by an Anheuser-Busch security guard who, according to Mr. Carr, accused him of stealing company property. Mr. Carr claims he was questioned by the security guard for several hours, after which he returned to his office. Before he left for the day, Mr. Carr contends he showed the security guard he did not have a docking station for his office computer. After lunch the next day, June 4, 2009, Mr. Carr was questioned by two City of St. Louis police detectives at the Anheuser-Busch office building. He claims that, during that discussion, he

-4-

reiterated "the items were only intended for use in his office for legitimate office purposes, were never removed from the fourth floor and that he had no intention of stealing any property from the company." Mr. Carr denied violation of any company policy and stated his only intention was "to use the speakers (and docking station, if he had found one) at his company desk in connection with work that he was performing for the company." Mr. Carr acknowledged in his letter that, on June 4, 2009, Anheuser-Busch terminated Mr. Carr for "stealing."

By letter dated October 22, 2009, Mr. Karrenbrock stated he was conducting an investigation of the information in Mr. Carr's appeal letter and needed an additional 60 days to gather more information.

John Burke of the Anheuser-Busch Corporate Security office conferred with Mr. Karrenbrock as he conducted his review. Mr. Burke prepared a memorandum to Mr. Karrenbrock in which he reacted to Mr. Carr's appeal letter. Mr. Burke concluded that the explanations and arguments offered in Mr. Carr's appeal letter were contrary to the facts. Mr. Burke stated in the memo that Mr. Carr was arrested by detectives for felony stealing of speakers and wires, that a detective provided a statement contradicting Mr. Carr's claim that detectives told him no crime was committed, and that Mr. Carr gave a taped statement to detectives after being advised of his Miranda rights in which he admitted to taking the speakers. Mr. Burke explained that, to obtain the speakers, Mr. Carr had to stand on a chair and screw the speakers out of the wall, that Mr. Carr admitted taking a box into the office into which to place the speakers, and that, when asked what he was going to do with the speakers, Mr. Carr said he would keep them in his office for awhile. Mr. Burke concluded in his memo that taking the box into the office indicated "premeditation" as Mr. Carr "would not have needed a box of that size to carry a bracket" for his docking station and that his statement about what he intended to do with the speakers "indicate[d] that he was going to remove those speakers from his office at a later date." Mr. Burke also explained Mr. Carr's encounter with the Anheuser-Busch

-5-

security guard when initially confronted about the speakers, characterizing Mr. Carr's answers as "delayed and evasive." Mr. Karrenbrock relied on Mr. Burke's memorandum, along with other information he learned in conversations with Mr. Burke and with Gary Davis, another employee of the Anheuser-Busch Corporate Security office, in affirming the decision to deny Mr. Carr's claim for severance benefits.

On December 21, 2009, Mr. Karrenbrock issued a Notice of Denial on Appeal of Mr. Carr's claim for severance benefits. Mr. Karrenbrock concluded that Ms. Boulicault's denial of Mr. Carr's claim for severance benefits was appropriate because Mr. Carr had violated company policy by misappropriating company property and that such a violation of company policy is deemed to constitute willful misconduct as that term is used in the SPD. Mr. Karrenbrock stated that his review revealed that Mr. Carr "was terminated for violating company policy. Specifically, Mr. Carr was terminated for violating Policy Number I-4, Section III.K." Mr. Karrenbrock further indicated that "Mr. Carr's termination for violating a company policy is deemed to constitute willful misconduct" which is not an enumerated circumstance for providing severance. Mr. Karrenbrock then quoted certain provisions in the Plan, including the provision that excludes payment of severance benefits if an employee is terminated for willful misconduct.

Mr. Karrenbrock also responded to Mr. Carr's complaints about Ms. Boulicault's alleged failure to produce information relevant to the claim denial. Mr. Karrenbrock explained that the Employee Separation Report was the "only document relied upon in making her determination . . . and Ms. Boulicault did not rely upon, review or consider any other document . . . and we have determined that there were no other 'relevant' documents (as determined under Labor Reg. § 2560.503-1(m)(8)), which must be provided with respect to Mr. Carr's claim."

By letter dated December 31, 2009, Mr. Carr's attorney again requested a copy of the company policy referred to in the denial decisions. Mr. Karrenbrock forwarded a copy of company Policy Number I-4 on January 5, 2009; the policy refers to the "[m]isappropriation or attempted misappropriation of Company property."

Mr. Carr filed suit challenging the denial of his severance benefits in accordance with 29 U.S.C. § 1132(a)(1)(B).

During the course of the litigation, Mr. Carr filed a motion to compel Anheuser-Busch to produce certain emails exchanged between Mr. Karrenbrock and Anheuser-Busch's legal department pursuant to the fiduciary exception to the attorney-client privilege. After conducting an in camera inspection of certain emails, the district court ordered Anheuser-Busch to produce an email dated October 9, 2009, but did not require production of three other emails, two dated December 10, 2009, and one dated December 21, 2009. Mr. Carr appeals this decision of the district court.

Anheuser-Busch filed the administrative record for Mr. Carr's claim under seal with the district court on July 5, 2011. The administrative record included only Mr. Carr's August 27, 2009, appeal letter and Mr. Burke's undated memo addressing various matters set forth in Mr. Carr's appeal letter.

Mr. Carr filed a motion for partial summary judgment on his ERISA claim on July 25, 2011. Mr. Carr asserted that the denial of his claim was erroneous under either an abuse of discretion or a less deferential standard of review. Mr. Carr argued in part that Ms. Boulicault and Mr. Karrenbrock both relied on a single document in making their decisions and that document was not substantial evidence to support the denials.

On August 1, 2009, Anheuser-Busch filed its motion for summary judgment on Mr. Carr's ERISA claim, asserting that the denial of his claim should be upheld under either an abuse of discretion or de novo standard of review. Anheuser-Busch's statement of uncontroverted material facts was filed under seal and accompanied by several exhibits, including a ten-page affidavit from Mr. Karrenbrock dated August 1, 2011.

Mr. Karrenbrock's affidavit discussed in part Plan terms, his investigation into Mr. Carr's claim, including conversations he reportedly had with Mr. Burke and Mr. Davis and upon which he relied in denying Mr. Carr's claim, other information he relied upon in denying the claim, and his opinion that Mr. Carr's failure to receive a copy of the company policy cited in Ms. Boulicault's decision or Mr. Burke's memorandum did not impact Mr. Carr's ability to challenge the denial of benefits. It also recited that Mr. Karrenbrock's decision was not impacted by his participation in Anheuser-Busch's retention bonus program. Mr. Carr objected to those paragraphs of Anheuser-Busch's statement of uncontroverted material facts that were based on Mr. Karrenbrock's affidavit. He alleged that the affidavit contained immaterial and inadmissible information outside the administrative record. He objected to Anheuser-Busch's making an improper attempt to introduce new facts in the record and to Anheuser-Busch's improper and belated attempt to explain the purported reasons for the decision.

The district court issued its Memorandum and Order granting Anheuser-Busch's motion for summary judgment on the ERISA claim and denying Mr. Carr's motion for partial summary judgment. Mr. Carr appeals the district court's ruling on his ERISA claim.[3]

---

[3]Mr. Carr also included a claim for unpaid vacation pay due after his termination. The district court declined to exercise supplemental jurisdiction over Mr. Carr's vacation pay claim and dismissed the claim without prejudice. Mr. Carr does not appeal the district court's ruling on the vacation pay claim.

II. Standard of Review

This Court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party. Smith v. United Television, Inc., 474 F.3d 1033, 1035 (8th Cir. 2007).

We review de novo the district court's determination of the appropriate standard of review under ERISA applicable to Anheuser-Busch's denial of severance benefits. Anderson v. U.S. Bancorp, 484 F.3d 1027, 1031 (8th Cir. 2007); Seitz v. Metropolitan Life Ins. Co., 433 F.3d 647, 650 (8th Cir. 2006). We also engage in a de novo review of the district court's application of the standard. Seitz, 433 F.3d at 650.

We review discovery rulings "in a manner both narrow and deferential, and reversal is only warranted if an erroneous ruling amounted to a gross abuse of discretion." Robinson v. Potter, 453 F.3d 990, 994-95 (8th Cir. 2006) (internal quotations omitted).

III. Discussion

A. Standard of Review Under 29 U.S.C. § 1132(a)(1)(B)

The Plan gives discretionary authority to the Plan Administrator. Therefore, the Plan language required the district court to review Anheuser-Busch's interpretation of the Plan for abuse of discretion. Anderson, 484 F.3d at 1031 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (en banc)).

Mr. Carr contends that a less deferential standard should have been applied by the district court due to procedural irregularities. In Woo v. Deluxe Corporation, 144 F.3d 1157 (8th Cir. 1998), we set forth a two-part test for determining whether a district court should apply an abuse of discretion or de novo standard of review to a plan administrator's denial of benefits. Under Woo, a claimant seeking de novo review had to "present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty. . . ." Id. at 1160.

In Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008), "the Supreme Court made clear the conflict does not change the standard of review applied by the district court. Rather, a conflict should be weighed as a factor in determining whether there is an abuse of discretion." Hackett v. Standard Ins. Co., 559 F.3d 825, 830 (8th Cir. 2009) (internal quotations omitted). The Court observed a "conflict of interest exists whenever the plan administrator is also the employer or insurance company which ultimately pays benefits." Id. at 830 (citing Glenn, 554 U.S. at 112). When considering all factors that might bear on whether the administrator abused its discretion, the conflict of interest should prove more important "where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration . . . ." Glenn, 554 U.S. at 117. It should prove less important "where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." Id.

As the district court correctly determined, Glenn abrogated conflict of interest as a basis for heightened review but did not address whether procedural irregularities may continue to trigger heightened review. As we have observed:

After the Supreme Court's decision in <u>Glenn</u>, the <u>Woo</u> sliding-scale approach is no longer triggered by a conflict of interest, because the Supreme Court clarified that a conflict is simply one of several factors considered under the abuse of discretion standard. The procedural irregularity component of the <u>Woo</u> sliding scale approach may, however, still apply in our circuit post-<u>Glenn</u>.

<u>Wrenn v. Principal Life Ins. Co.</u>, 636 F.3d 921, 924 n.6 (8th Cir. 2011) (internal citations omitted).

Mr. Carr alleges procedural irregularities in support of a higher review standard. We affirm the district court's determination that any procedural irregularities claimed by Mr. Carr are insufficient to trigger any heightened review that may be available in this circuit post-<u>Glenn</u>.

Mr. Carr alleges that Anheuser-Busch failed to follow the Plan's claim procedures, failed to comply with ERISA's requirement that he be given adequate written notice of the specific reasons for denial of his claim, and failed to provide to him a full and fair review.

Mr. Carr presented no evidence that the procedures followed by Anheuser-Busch were made "without reflection or judgment" or were "the product of an arbitrary decision or the plan administrator's whim." <u>Parkman v. Prudential Ins. Co. of America</u>, 439 F.3d 767, 772 n.5 (8th Cir. 2006) (internal citations omitted). There is no evidence that Anheuser-Busch failed to consider a fundamental determination which was required and which would have changed the outcome here. <u>Cf. Chronister v. UNUM Life Ins. Co. of America</u>, 563 F.3d 773, 777 (8th Cir. 2009) (concluding defendant's internal claims manual required a procedure that defendant did not follow or consider). We also reject as insufficient Mr. Carr's contention that Anheuser-

Busch's alleged failure to provide requested documents should trigger any heightened review. There is no evidence that the procedures followed by Anheuser-Busch in regard to Mr. Carr's claim were any different than those employed in reviewing the claims of other participants. The Court does not find that the alleged irregularities resulted in a serious breach of Anheuser-Busch's fiduciary duty or "trigger a total lack of faith in the integrity of the decision making process." Layes v. Mead Corp., 132 F.3d 1246, 1251 (8th Cir. 1998) (internal quotation marks omitted).

Accordingly, the district court did not err in reviewing Anheuser-Busch's decision under an abuse of discretion standard.

## B.     Analyzing the Denial of Severance Benefits

Under the abuse of discretion standard "we consider whether the administrator abused its discretion—that is, whether its interpretation of the plan was reasonable, and whether its decision was supported by substantial evidence." Pralutsky v. Metropolitan Life Ins. Co., 435 F.3d 833, 838 (8th Cir. 2006). Substantial evidence is "more than a scintilla but less than a preponderance." Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000).

### 1.     Matters Outside the Administrative Record

As an initial matter, Mr. Carr alleges the district court erred in considering and relying on, over his objections, Mr. Karrenbrock's affidavit testimony, which was not placed in the administrative record for Mr. Carr's claim.

Under an ERISA abuse of discretion standard, judicial review of the administrator's decision is typically limited to examining the administrative record created during the administrative process. A reviewing court "'must focus on the

evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales.'" King v. Hartford Life and Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (quoting Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999)). An administrator with discretion under the Plan "must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the adverse decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator." Id. at 1000. ERISA and our prior decisions require this. See 29 U.S.C. § 1133; Brumm v. Bert Bell NFL Retirement Plan, 995 F.2d 1433, 1436 (8th Cir. 1993).

We have refused to allow claimants "'to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation.'" King, 414 F.3d at 999 (quoting Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir. 1998)). "Such additional evidence gathering is ruled out on deferential review, and discouraged on de novo review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998) (internal quotations omitted). Further, such additional evidence may be admitted only if good cause is shown for its omission from the administrative record. Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 630 (8th Cir. 2007) (reviewing the decision for an abuse of discretion and applying this standard to evaluate proffered additional evidence).

Mr. Carr concedes that the district court did not extensively discuss the factual record in its decision but contends the district court relied on the expanded administrative record when reaching its decision because the district court stated: "Mr. Karrenbrock was told that plaintiff knew that he should not have removed the speakers without permission and that the police were prepared to issue a warrant if

the company decision to press charges." We agree with Mr. Carr that this specific information is not included in Mr. Burke's memorandum or any other portion of the administrative record.

Anheuser-Busch made no good cause showing here to admit additional evidence. Mr. Karrenbrock could have taken notes, prepared a contemporaneous memorandum to his file, or in some other way memorialized these conversations with security personnel so as to include that information in the administrative record. He did not do so. Mr. Carr objected to the admission of evidence outside the administrative record. We conclude the district court abused its discretion when it reviewed Anheuser-Busch's decision on an expanded factual record. Brown, 140 F.3d at 1201.

For the reasons that follow, we also conclude this error was harmless as the administrative record reasonably supports the conclusion Anheuser-Busch reached.

2.      Considering the Administrative Record

Under an abuse-of-discretion standard, we ask whether the administrator's interpretation of the plan was reasonable. Phillips-Foster v. UNUM Life Ins. Co. of America, 302 F.3d 785, 794 (8th Cir. 2002). To inform the analysis of whether the administrator's interpretation of uncertain terms in a plan is reasonable, this Court reviews several factors, including "whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan." Finley v. Special Agents Mut. Benefit Assoc., Inc.,

957 F.2d 617, 621 (8th Cir. 1992) (citing de Nobel v. Vitro Corp., 885 F.2d 1180, 1188 (4th Cir. 1989)).

Even with these factors, however, "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." King, 414 F.3d at 999 (alteration in original) (quoting de Nobel, 885 F.2d at 1188). "If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997). "We do not, however, substitute our own weighing of the evidence for that of the administrator." Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 777 (8th Cir. 1998).

We affirm the district court's ruling that the decision to deny Mr. Carr severance was based on a reasonable interpretation of the severance benefits program. Ms. Boulicault explained to Mr. Carr in her denial letter and in her later correspondence that she and the Program considered willful misconduct to include violations of company policy, and this was the reason Mr. Carr was being denied benefits. Mr. Carr does not seem to challenge her interpretation of the term "willful misconduct," and, regardless, her interpretation satisfies the standard we apply.

We also conclude the decision to deny benefits was supported by substantial evidence. Ms. Boulicault considered only the Employee Separation Report in her initial denial of benefits; this form clearly states Mr. Carr was terminated for violation of company policy. Mr. Karrenbrock did not rely solely on the Employee Separation Report. To evaluate his decision, we consider only those items in the administrative record—Mr. Carr's August 27, 2009, appeal letter and Mr. Burke's memorandum.

These documents constitute substantial evidence supporting the decision to deny Mr. Carr benefits. There is no indication in the administrative record that Mr. Carr was discharged for any reason other than violation of company policy. Mr. Carr likely disagreed with the reason for his discharge, but our review does not extend to determining whether Mr. Carr deserved to be terminated under all of the circumstances. "[W]e are limited to determining whether a reasonable person could have interpreted and applied the ERISA plan in the way that the administrator did, and here the answer is yes." Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program, 424 F.3d 734, 740 (8th Cir. 2005).

When considering all factors that might bear on the abuse of discretion analysis, we determine the evidence presented regarding the conflict of interest does not suggest a higher likelihood that the benefits decision was affected. See Glenn, 554 U.S. at 117; Green v. Union Sec. Ins. Co., 646 F.3d 1042 (8th Cir. 2011). Mr. Carr acknowledges there is no history of biased claim determination on the part of Anhesuer-Busch. Instead, he alleges that Mr. Karrenbrock's being paid a bonus with a stated goal of reducing Anheuser-Busch's labor expenses should be given weight as a conflict of interest. Because the record contains evidence of neither biased claims administration nor efforts to reduce the risk of such administration, we give the conflict some weight. Manning v. American Republic Ins. Co., 604 F.3d 1030, 1039 (8th Cir. 2010); Darvell v. Life Ins. Co. of North America, 597 F.3d 929, 934 (8th Cir. 2010). We conclude this fact on this record does not alter the outcome under the abuse of discretion analysis.

C.    Full and Fair Review Under 29 U.S.C. § 1133

Under ERISA, employee benefits plans must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §

1133(2). Mr. Carr asserts he was not afforded a full and fair review, repeating in support of this claim many of the arguments he makes regarding the conflict of interest and procedural irregularities cited in support of his argument for a heightened standard of review.

Any suggestion that Mr. Carr did not know the reason for the denial of his claim or the specific misconduct referred to in Anheuser-Busch's decision is belied by the two letters he submitted regarding his claim. Regardless, the rationale for his termination and the denial of benefits has remained the same throughout this case. While a more detailed explanation may have been warranted had the basis for denying his claim been more complicated, nothing more specific was necessary here. Midgett v. Washington Group Int'l Long Term Disability Plan, 561 F.3d 887, 896 (8th Cir. 2009).

Mr. Carr argues he was not afforded a full and fair review because he did not receive Mr. Burke's memorandum to Mr. Karrenbrock that was part of the administrative record. Mr. Burke's memorandum was generated in response to Mr. Carr's letter of appeal of Ms. Boulicault's denial of his claim. The document was part of the record generated during the appeal process. Mr. Carr had no right to receive or respond to it prior to the final decision issued by Mr. Karrenbrock. On these facts, full and fair review "does not include reviewing and rebutting, prior to a determination on appeal, the [evidence] solicited on that same level of appeal." Id.

Any alleged failure to provide to Mr. Carr materials after the final decision by Mr. Karrenbrock was issued does not implicate the "full and fair" review provision of 29 U.S.C. § 1133. Mr. Carr was not frustrated from obtaining the full administrative record and filing suit in federal court. See Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079 (8th Cir. 2009) (violation of 29 U.S.C. § 1133 does not justify an award of damages, but procedural relief gauged to provide plaintiff with the

-17-

full and fair review he was denied, e.g., remand to the plan administrator, allowing plaintiff to file an appeal out of time, or excusing plaintiff's failure to exhaust administrative remedies). Mr. Carr did not seek a court order requiring Anheuser-Bush to produce documents or pay a daily fine. The administrative record was timely produced during discovery.

D.    Discovery Ruling[4]

Mr. Carr filed a motion to compel Anheuser-Busch to produce certain documents withheld from production under the attorney-client and work-product privileges. The district court examined four emails in camera, ordered one email dated October 9, 2009, produced under the fiduciary exception to the attorney-client privilege, but held that the other three emails were not subject to the fiduciary exception and did not have to be produced.

We review the district court's discovery ruling for a gross abuse of discretion. The district court's discretion is particularly broad as to discovery matters. Cook v. Kartridg Pak Co., 840 F.2d 602, 604 (8th Cir. 1988). If Mr. Carr can demonstrate a gross abuse of discretion, then he must also demonstrate prejudice. See Ranger Transp., Inc. v. Wal-Mart Stores, 903 F.2d 1185, 1187 (8th Cir. 1990). The district court's discovery ruling was not a gross abuse of discretion, and Mr. Carr has not shown the requisite prejudice.

When denying Mr. Carr's request for production of the December emails, the district court reasoned that "[i]n contrast to the October 9, 2009, email, the December 2009 emails relate[d] to the substantive merits of plaintiff's individual claim and the

---

[4]We grant Mr. Carr's motion to supplement the record on appeal with the four emails examined by the district court in camera.

content of the final decision letter denying his severance benefits, not advice as to procedural duties owed to each beneficiary." See United States v. Mett, 178 F.3d 1058, 1064 (9th Cir. 1999) (concluding that the fiduciary exception applies only to communications that involve plan administration). The district court also determined that, by December 2009, Mr. Carr's interest had become sufficiently adverse to that of the plan administrator's interest because the final decision to deny benefits had effectively been made. Mr. Carr's only recourse, if he disagreed with the decision, was litigation. See Smith v. Jefferson Pilot Fin. Ins. Co., 245 F.R.D. 45, 48 (D. Mass. 2007) (determining the content and context of the communication must be examined, including whether the communication was made before or after the decision to deny benefits, to determine whether a particular attorney-client communication involves plan administration or legal advice for the fiduciary's own benefit).

The district court's discovery ruling was not a gross abuse of discretion.

IV. Conclusion

For the foregoing reasons, we affirm the judgment of the district court granting summary judgment in favor of Anheuser-Busch.

_____