# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2586

———————

Beverly River,

              Appellant,

      v.

Edward D. Jones Co.; Metropolitan
Life Insurance Company,

              Appellees.

Appeal from the United States
District Court for the
Eastern District of Missouri.

———————

Submitted: April 12, 2011
Filed: July 22, 2011

———————

Before WOLLMAN and MELLOY, Circuit Judges, and MILLER,[1] District Judge.

———————

WOLLMAN, Circuit Judge.

Beverly River was the named beneficiary of an accidental benefits plan that her husband, David Polk, obtained through his employer, Edward D. Jones & Co. After Polk died as a result of a motorcycle accident, the plan administrator, Metropolitan Life Insurance (Metlife), determined that Polk was intoxicated at the time of the accident and denied coverage. River brought suit under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq.*, alleging that Metlife had

———————

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas, sitting by designation.

abused its discretion. The district court[2] granted Metlife's motion for summary judgment. River appeals, contending that the district court erred because Metlife's interpretation of the relevant policies was arbitrary and capricious and not supported by substantial evidence. We affirm.

On September 22, 2007, Polk and River met with friends at Mark Twain Lake in Ralls County, northwest of St. Louis, Missouri. They ate lunch together and Polk consumed five beers between 11:00 a.m. and 5:00 p.m. He left the campground on a motorcycle. Around 5:25 p.m., he lost control on a curve and was thrown from the motorcycle, striking a tree and sustaining fatal head injuries. The Ralls County coroner's report stated that the cause of death was severe head trauma. In a certified toxicology report issued in October 2007, the Missouri State Highway Crime Laboratory Division stated that Polk's blood alcohol content (BAC) was 0.128%.

At the time of his death, Polk was an employee of Edward D. Jones & Co. and was enrolled in its Employee Welfare Benefit Plan (the Plan), a type of plan governed by ERISA. 29 U.S.C. § 1002. Polk was enrolled for $100,000 in Basic Accidental Death and Dismemberment (AD&D) benefits and had elected to obtain an additional $100,000 in Supplemental Accidental Death and Dismemberment (SD&D) benefits. River was Polk's named beneficiary.

The Plan grants Metlife, its claims administrator, the discretion to interpret the terms of the Plan and to make eligibility determinations. Several exclusions that define the scope of the Plan's coverage relate to intoxication and are relevant to our analysis. The summary plan description (SPD) gives an overview of the nature and scope of various policies. The section of the SPD outlining basic AD&D benefits states in pertinent part:

---

[2]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

Basic AD&D Benefits will only be paid for losses caused by accidents. Benefits will not be paid by the Plan if you or your covered family members die or are dismembered as a result of the following circumstances:

- intoxication while operating a vehicle or other device involved in an accident

- intentionally self-inflicted injury

Appellee's App. 92. The section of the SPD outlining SD&D benefits states in pertinent part:

Supplemental and Family AD&D Benefits will only be paid for losses caused by accidents. Benefits will not be paid by the Plan if you or your covered family members die or are dismembered as a result of the following circumstances:

- intentionally self-inflicted injury

- while intoxicated or under the influence of controlled substances (not administered by a doctor)

Appellee's App. 95. The section of the Metlife Certificate of Insurance addressing AD&D coverage also contains an intoxication exclusion, which states:

We will not pay benefits under this section for any loss if the injured party is intoxicated at the time of the incident and is the operator of a vehicle or other device involved in the incident.

**Intoxicated** means that the injured person's blood alcohol level met or exceeded the level that creates a legal presumption of intoxication under the laws of the jurisdiction in which the incident occurred.

Appellee's App. 40 (emphasis in original).

River submitted a claim for benefits to Metlife, which denied the claim on the grounds that 1) the intoxication exclusion in the certificate of insurance barred recovery; 2) Polk's intoxication rendered his death reasonably foreseeable and therefore it did not constitute an "accident"; and 3) the mental and physical impairments caused by consumption of alcohol were intentionally self-inflicted injuries that caused or contributed to Polk's death. River appealed, contending that the state toxicology report was invalid and asserting that eyewitness accounts from individuals who were with Polk immediately prior to his death would establish that he displayed no signs of intoxication or impairment of any kind. She maintained that, given Polk's known consumption of alcohol and his weight of 240 pounds, he would have had a BAC of 0.00 at the time of his death based on his having consumed five beers between 11:00 a.m. and 5:00 p.m. Metlife upheld the denial of accidental death benefits and reiterated the grounds on which it had based its decision.

River sued Edward T. Jones Co. and Metlife, contending that the denial of benefits was error. She argued, among other things, 1) that the Plan had failed to define "intoxication" in the SPD, which was the only document Polk had received, and had therefore failed to provide sufficient notice to Polk of the circumstances under which coverage would be excluded in violation of 29 U.S.C. § 1022(b); 2) that the administrator had applied the wrong standard of what constitutes an "accident" under relevant Eighth Circuit case law; and 3) that, because the SPD intoxication exclusions conflict with the intoxication exclusion in the certificate of insurance, the former must govern and the administrator must show that death was a "result of" intoxication, which it had failed to do.

Metlife moved for summary judgment, contending that it was justified in denying benefits based on the language of the policy. The district court granted the motion, concluding that the SPD was not deficient in apprising the average plan participant that benefits would be denied for injuries incurred as a result of operating a vehicle while intoxicated, and that even if it was deficient, River failed to establish that Polk had detrimentally relied on that information. The district court also concluded that it was not unreasonable for the plan administrator to deny benefits based either on the intoxication exclusion in the certificate of insurance or on similar exclusions in the SPD.

When, as here, a disability plan governed by ERISA grants an administrator the discretion to determine whether a claimant is eligible for benefits, we review the administrator's decisions for abuse of discretion. Ratliff v. Jefferson Pilot Fin. Ins. Co., 489 F.3d 343, 346 (8th Cir. 2007). "The discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." Id. at 348 (internal quotation marks omitted). Rather, a court will reverse a claims administrator's determination only if it is arbitrary and capricious. Jackson v. Prudential Ins. Co., 530 F.3d 696, 701 (8th Cir. 2008). Accordingly, "[w]hen a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." Ratliff, 489 F.3d at 348 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 346 (internal quotation marks omitted).

River contends that Metlife's decision to deny benefits was both arbitrary and capricious and not supported by substantial evidence. She attacks as baseless two of the rationales that Metlife provided —that the death was reasonably foreseeable, not

accidental, or, in the alternative, that the death was intentionally self-inflicted.[3]  But River has failed to address the application of the general exclusion for intoxication that appears in the certificate of insurance, on which Metlife relied in explaining its decision to deny benefits.  We conclude that, based on this exclusion alone, Metlife did not abuse its discretion as plan administrator when it denied benefits.

As set forth earlier, the certificate of insurance provides:  "We will not pay benefits under this section for any loss if the injured party is intoxicated at the time of the incident and is the operator of a vehicle or other device involved in the incident."  Under the policy, an insured is deemed  "intoxicated" when "[his or her] blood alcohol level met or exceeded the level that creates a legal presumption of intoxication under the laws of the jurisdiction in which the incident occurred."  The toxicology report indicated that Polk's BAC was 0.128%, which exceeds the legal limit in Missouri.[4]  Metlife reasonably concluded that Polk was intoxicated at the time of the incident and denied benefits on the basis of the Plan's clear language.  Its application of the intoxication exclusion accords with other decisions addressing the

_____

[3]River's arguments in favor of coverage have evolved over the course of the litigation.  For instance, River now contends that alterations to the SPD with a date-stamp "December 31, 2007" make clear that the document was not operable in September 2007, the time of Polk's death, and therefore the intoxication exclusions within the SPD should not apply.  Because this argument is first raised on appeal, it cannot serve as a basis for reversal.  See, e.g., Pub. Water Supply Dist. No. 3 v. City of Lebanon, Mo., 605 F.3d 511, 524 (8th Cir. 2010).

[4]River contends that it was unreasonable for Metlife to rely on the toxicology report because basic foundational facts—such as when the test occurred, what type of blood-alcohol calculation was made, and who performed the test—were never established.  The administrative record reflects that the results of the test appeared in a certified toxicology report issued by the Missouri State Highway Patrol Crime Laboratory Division and signed by one of its technicians.  Appellee's App. II 380. We conclude that it was not unreasonable for the administrator to credit this source and rely on its findings.

issue.  See Lankford v. Webco, Inc., 545 F. Supp. 2d 961, 970-72 (W.D. Mo. 2008) (upholding as reasonable plan administrator's denial of coverage based on clause excluding injuries incurred as result of use of alcohol "in excess of a state or federal statute"); Rekowski v. Metropolitan Life Ins. Co., 417 F. Supp. 2d 1040, 1051 (W.D. Wis. 2006) (concluding that administrator's decision to invoke similarly worded intoxication exclusion to deny accidental death benefits was not arbitrary and capricious).

River contends that even if Metlife's interpretation of the exclusion was reasonable, there was no substantial evidence that Polk was intoxicated.  She maintains that eyewitness accounts refute the findings of the toxicology report and render unreasonable the inference that Polk was intoxicated.  We find this argument unpersuasive.  The toxicology report constituted evidence that a "reasonable mind might accept as adequate to support a conclusion,"  Ratliff, 489 F.3d at 346, and therefore satisfies the substantial evidence standard.

Because we agree with the district court's conclusion that the denial of benefits was justified in light of the intoxication exclusion, we need not address Metlife's assertion that Polk's death was not accidental because it was reasonably foreseeable or, alternatively, the result of intentional self-inflicted injury.

The judgment is affirmed.

_____