# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-4047

_____

Sean Nichols

*Plaintiff - Appellee*

v.

Unicare Life and Health Insurance Company

*Defendant*

Acxiom Corporation Life and Accidental Death and Dismemberment Insurance Plan

*Defendant - Appellant*

_____

No. 13-1033

_____

Sean Nichols

*Plaintiff - Appellee*

v.

Unicare Life and Health Insurance Company

*Defendant - Appellant*

Acxiom Corporation Life and Accidental Death and Dismemberment Insurance Plan

*Defendant*

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 25, 2013
Filed: January 16, 2014 (Corrected: January 16, 2014)

_____

Before WOLLMAN, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

UniCare Life and Health Insurance Company ("Unicare") appeals the district court's[1] grant of summary judgment in favor of Sean Nichols in this Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq. case. We affirm.

## I.    BACKGROUND

Nichols is the surviving spouse of Dana Nichols. Dana was employed by Acxiom Corporation, and she was insured under the Acxiom Corporation Life and Accidental Death and Dismemberment Insurance Plan (the "plan"). The plan is funded by a policy underwritten by UniCare, and UniCare also serves as the claims administrator.

On May 3, 2010, Dana was found face down in bed, and upon being transported to a nearby hospital, she was pronounced dead. The autopsy report

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

indicated that her manner of death (natural, accidental, etc.) "could not be determined," and her cause of death was mixed drug intoxication. The autopsy reported that "[t]oxicology detected multiple drugs in the blood to include citalopram/escitalopram, hydrocodone, oxycodone and loratadine. The atropine detected is the result of terminal medical attention. No alcohol was detected." An insurance record documenting Dana's prescription claims during the last twelve months of her life show the following prescriptions and fill dates: Endocet 30-day prescription last filled on April 27, 2010; Ambien 30-day prescription last filled on April 3, 2010; levothyroxine, 30-day prescription last filled on April 3, 2010; apap/codeine 2-day prescription last filled on December 29, 2009; diazepam 2-day prescription last filled on December 29, 2009; and sertraline, 30-day prescription last filled on October 12, 2009. Emergency personnel responding at the scene also reported a prescription bottle for hydrocodone on the night stand with 12 pills missing from it. As we read the administrative record, there is no information about when this prescription was filled.[2]

Nichols filed a claim for accidental death benefits under the plan. By letter dated February 9, 2011, UniCare denied Nichols' claim, stating that because the cause of death was listed as "could not be determined," it had "no choice" but to deny the claim. Nichols filed an administrative appeal and supplemented the record (which previously consisted only of the autopsy report) with medical and prescription records, as well as letters from himself and Dana's parents, recounting her recent medical problems and her social history. Nichols recounted that since Dana's March 2010 car accident, she had difficulty sleeping, and was prescribed Ambien. He noted that while on Ambien, Dana had been sleepwalking throughout the house and would even eat something and not remember it in the morning. Dana's mother recounted

_____

[2]The district court noted that Dana's March 2010 car accident had exacerbated her back pain, and further observed that the insurer's list of medications in the administrative record would not include prescriptions filled without a corresponding medical insurance claim.

that Dana was happily married with grown children; that Dana's son was newly married; and Dana's daughter was set to begin nursing school. Dana's mother also recounted that Dana was looking forward to a scheduled lap band surgery to assist her with weight loss and ease her back pain from the car accidents and that she was generally looking forward to the future. The letter from Dana's father reiterated Nichols' statements about Dana's sleepwalking behavior while on Ambien and her general good outlook for the future.

By letter dated September 2, 2011, UniCare denied Nichols' appeal, this time stating two reasons for the adverse decision: (1) the manner of death was listed on the death certificate as "could not be determined," and (2) the plan excludes benefits for death caused by intoxication. Nichols filed the instant action in district court pursuant to ERISA. Upon Nichols' motion for summary judgment, the district court, applying a de novo standard of review, found that Nichols was entitled to benefits because the cause of Dana's death was more likely than not an accident. The district court rejected UniCare's argument that its analysis of whether Dana's death was an accident satisfied the standard set forth in Wickman v. Northwestern National Insurance Co., 908 F.2d 1077 (1st Cir. 1990).

UniCare argued to the district court that under Wickman, Dana's consumption of numerous medications was an intentional act for which she would have subjectively expected death to be a highly likely outcome. In this regard, UniCare contended that since Dana had been consuming prescription medications for at least a year, a reasonable interpretation of the evidence was that Dana had established a tolerance to the medications she had been consuming in combination for years, and that she must have taken more than the prescribed dosages on the date of her death. The district court rejected this argument and noted that UniCare's analysis was flawed because it "provides no indication that UniCare attempted to ascertain Dana Nichols's subjective expectations or whether a reasonable person in her position would have viewed her death as highly likely to occur." J.A. at 32.

-4-

With regard to the intoxication exclusion, the district court concluded that the exclusion was not intended to cover Dana's situation. Because the plan defines "intoxicated" as "legally intoxicated as determined by the laws of the jurisdiction where the accident occurred," the district court found that a reasonable person in the position of a plan participant would understand that the exclusion for intoxication was intended to apply to death caused by committing acts, such as driving, while intoxicated, not to situations where the immediate cause of death is ingestion of a lethal mixture of prescription drugs. The district court cited <u>Sheehan v. Guardian Life Insurance Co.</u>, 372 F.3d 962, 967 (8th Cir. 2004) (finding that exclusion for loss resulting from being under the influence of a controlled substance was "intended to apply to death caused by, for example, driving while intoxicated, not to the accidental ingestion of a controlled substance"), in support of its conclusion. J.A. at 33-34.

UniCare appeals and argues that the standard of review should be abuse of discretion; that the district court impermissibly shifted the burden from Nichols having to prove entitlement to benefits to UniCare having to disprove Nichols' entitlement; and that the district court erroneously concluded that the intoxication exclusion did not preclude an award of accidental death benefits. UniCare also challenges the $22,220 attorney fee awarded to Nichols.

## II. DISCUSSION

### A. Standard of Review

ERISA provides that an employee may bring a civil action to recover benefits due to him under the terms of an employee welfare benefit plan. 29 U.S.C. § 1132(a)(1)(B). Although the statute does not specify the scope of judicial review applicable to ERISA claims, in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989), the Supreme Court held that a denial of benefits challenged under ERISA is subject to de novo review unless the terms of the benefit plan give the plan

administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. When a plan confers such discretionary authority, the administrator's or fiduciary's decision is given deference and reviewed under an abuse-of-discretion standard. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). However, when a conflict of interest exists because the plan administrator is both the decision-maker and the insurer, "we take that conflict into account and give it some weight in the abuse-of-discretion calculation." Carrow v. Standard Ins. Co., 664 F.3d 1254, 1259 (8th Cir. 2012).

The district court found that the plan did not confer discretionary authority on UniCare as the plan did not contain the necessary discretionary language. The district court focused on the language in the claims provisions, specifically the following: "[a]ny benefits due under this plan shall be due once we have received proper, written proof of loss, together with such reasonably necessary information we may require to determine our obligation." We have previously found that similar language did *not* confer discretionary authority on the administrator. See Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 629 (8th Cir. 2007) (noting that policy language stating that benefits would be paid when "we determine that proof . . . is satisfactory" was ambiguous and did not confer discretion on plan administrator).

UniCare, on the other hand, points us to Ferrari v. Teachers Insurance and Annuity Ass'n, 278 F.3d 801 (8th Cir. 2002). In Ferrari, the claimant was initially awarded disability benefits, and in order to keep receiving them on a long-term basis, was required to submit written proof of continued total disability. We noted that the plan language "that the employee must provide written proof of continued total disability at reasonable intervals to be determined by TIAA and that such proof must be satisfactory to TIAA" sufficiently conferred discretion on the administrator. Id. at 806. UniCare argues that its plan has the same language, albeit in the section addressing *enrollment* in the policy, not in the section addressing claims

administration. UniCare contends that discretionary language anywhere in the plan confers upon it the discretion necessary to obtain an abuse-of-discretion standard of review for denial of claims. Nichols, on the other hand, contends that the discretionary language must address claims administration or must grant general discretion to construe plan terms in order for the plan to obtain an abuse-of-discretion standard of review.

We agree with Nichols that the plan does not grant UniCare discretion to determine eligibility for benefits or to generally construe the terms of the plan. Ferrari does not bear the weight UniCare places on it because the language from the plan in that case gave the administrator the discretion to make decisions about "continued total disability claims"–and the viability of a "continued total disability claim" was the decision being challenged on appeal. Id. at 805-06. In the instant case, the decision being challenged on appeal has nothing to do with Dana's enrollment in the plan. The challenged decision is the administrator's denial of a claim for accidental death benefits. The plan's language in the claims section, which is lacking discretion-granting words according to our case law, see Rittenhouse, 476 F.3d at 629, is the most relevant. Nor is there a general grant of discretionary authority to UniCare to construe all plan terms. Accordingly, we hold that the district court correctly applied de novo review.[3]

---

[3]Even if we were to hold that the plan granted UniCare discretion, the financial conflict of interest that exists in this case would be taken into account, somewhat ameliorating the abuse-of-discretion standard. See Carrow, 664 F.3d at 1259 (holding that when a conflict of interest exists because the plan administrator is both the decision-maker and the insurer, "we take that conflict into account and give it some weight in the abuse-of-discretion calculation").

## B.     Accidental Death Claim

Nichols argues UniCare erred in denying his claim for accidental death benefits with the stated rationale that the autopsy report listed the manner of death as "could not be determined." Nichols submitted proof of his claim for accidental benefits in the form of the death certificate, autopsy report, insurance medical records, prescriptions records, and evidence relevant to Dana's state of mind, her relationships with family, and an upcoming scheduled surgery.

As noted, in front of the district court, UniCare advanced the Wickman test as the vehicle for determining whether Dana's death was an accident, and asserted that the facts of this case, as placed in the Wickman rubric, indicated that the incident was *not* an accident. Under Wickman, an event is an accident if the decedent did not subjectively expect to suffer "an injury similar in type or kind to that suffered" and the suppositions underlying that expectation were reasonable. 908 F.2d at 1088. "The determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." Id. If the evidence is insufficient to determine the decedent's subjective expectation, the question is then whether "a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." Id.

UniCare contends that there is insufficient subjective evidence of Dana's expectations, and the objective evidence suggests that Dana's consumption of numerous medications was an intentional act for which a reasonable person would have expected death as the outcome. UniCare surmises that since Dana had been taking this same combination of medications for several months, she became tolerant to that level of medicine and subsequently took more than the prescribed dosage on the night she died. UniCare argues that, objectively speaking, Dana would have

viewed death as highly likely to occur in such a situation. This argument is strikingly similar to the one made by the plan administrator/insurer in the recent case of McClelland v. Life Insurance Company of North America, 679 F.3d 755 (8th Cir. 2012).

In McClelland, under the deferential abuse-of-discretion standard of review, we held that the insurance company erroneously denied accidental death benefits to the widow of the insured decedent who died while driving a motorcycle at high speeds with an elevated blood alcohol level. As "evidence" of the deceased's state of mind, the insurance company offered that McClelland had been educated on the dangers of drinking and driving and should have known that death was highly likely to occur in his circumstances. We held that this reasoning was an abuse of the insurer's discretion, and a misapplication of the agreed-upon standard set forth in Wickman, because better and more concrete evidence of McClelland's subjective state of mind on the morning of the accident (submitted in the form of affidavits from family, friends and witnesses on the day of the accident), was that he had no intention to die and certainly did not think death was likely to occur as he went on a social mid-Saturday morning motorcycle ride. Id. at 760-61.

Like the insurance company in McClelland, UniCare ignores the subjective evidence submitted by Nichols, and instead makes leaps to get to the "objective" conclusion it desires. There was no evidence in the record that Dana had developed a tolerance to her medications or that she took all 12 of the missing hydrocodone pills on the night of her death. No evidence suggests that Dana was suicidal. Similar to the motorcycle driver in McClelland who had been successfully weaving in and out of traffic at a high rate of speed for over six miles and therefore did not expect to die that day, Dana had been taking this combination of prescribed medications, as admitted by UniCare, for some period of time. There is no evidence whatsoever that Dana intended to kill herself or thought it likely she would die on May 3, 2010. The subjective evidence, in the form of letters and statements from her husband and

parents, suggests otherwise. To the extent that her subjective mind set could still be viewed as uncertain, the objective evidence tended to show that Dana had been ingesting a combination of prescribed medication for some time, and under these circumstances, a reasonable person with Dana's characteristics would not have viewed death as highly likely to occur. Nor is there a medical determination that the death was "not accidental" as alleged by UniCare. Dana's death falls squarely within the meaning of accident, a word not otherwise defined in the policy, and as viewed under the Wickman mandate to consider the situation from the "perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." 908 F.2d at 1088. As the district court aptly stated, "[i]n sum, all of the evidence indicates that Dana's death was the unexpected result of ingesting prescribed medications."[4] J.A. at 33. Accordingly, due to all of the foregoing, we find that the district court correctly found that UniCare erred in denying coverage for accidental death benefits.

---

[4]Our conclusion is bolstered by the presumption against suicide that the Eleventh Circuit has recognized in the context of an ERISA case, holding that "[b]oth the negative presumption against suicide and the affirmative presumption of accidental death" advance ERISA's goals of protecting the interests of plan beneficiaries and uniformity in plan administration. Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1041 (11th Cir. 1998). The Horton court held that these goals were furthered by providing "uniform rules to resolve coverage questions where the evidence of how the insured died is inconclusive." Id. The court also noted that a majority of states recognize the presumption against suicide, id., and Arkansas is one of those states. See Wood v. Valley Forge Life Ins. Co., 478 F.3d 941, 947 (8th Cir. 2007) (recognizing the Arkansas "strong" presumption against suicide). There would be nothing remarkable about applying such a presumption in an uncertain-cause-of-death ERISA case, as ERISA plan administrators are bound to follow federal common law, as informed by state common law. Shipley v. Ark. Blue Cross & Blue Shield, 333 F.3d 898, 902 (8th Cir. 2003). However, we need not even rely on the presumption because as noted above, Nichols has met his burden to establish entitlement to Dana's accidental death benefits.

## C.    Intoxication Exclusion

UniCare's final argument is that it can avoid paying benefits due to the plan's intoxication exclusion.  The exclusion states that no benefit will be paid for a death that results from being intoxicated.  "Intoxicated" is defined in the plan as "legally intoxicated as determined by the laws of the jurisdiction where the accident occurred."  Because it is an exception to coverage, UniCare has the burden of proving that the exclusion applies.  Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992).  We agree with the district court that UniCare did not meet this burden.  Arkansas law defines intoxication with reference only to the public offenses of drunk driving and public intoxication.  Jones Truck Lines, Inc. v. Letsch, 436 S.W.2d 282, 284 (Ark. 1969).  Dana's death involved neither.  We view the common and ordinary meaning of the policy language as a reasonable person in the position of the plan participant would have understood the words to mean.  Adams v. Cont'l Cas. Co., 364 F.3d 952, 954 (8th Cir. 2004).  A reasonable plan participant would have understood that the plan's intoxication exclusion is intended to apply to death caused by committing acts, such as driving, while intoxicated; not to situations where the immediate cause of death is ingestion of a lethal mixture of drugs that have been prescribed for use by the decedent.  See Sheehan, 372 F.3d at 967 (finding that exclusion for loss resulting from being under the influence of a controlled substance was "intended to apply to death caused by, for example, driving while intoxicated, not to the accidental ingestion of a controlled substance").  The district court correctly found that UniCare had not proven that the exclusion should be used to deny coverage.

## D.    Costs and Fees

In a separate order, the district court awarded Nichols filing fees, prejudgment interest and $22,220 in attorney fees.  UniCare argues this was an abuse of the district court's discretion.  In deciding whether to award fees in ERISA cases, we are guided

by the five factors set forth in <u>Lawrence v. Westerhaus</u>, 749 F.2d 494, 496 (8th Cir. 1984) (per curiam) ((1) degree of bad faith; (2) ability to pay; (3) deterrence; (4) significance of the legal question; and (5) relative merits of the positions). The district court's decision is reviewed for an abuse of discretion. <u>Id.</u> at 495. In analyzing the factors, the district court found that a fee was warranted, and we find that the district court did not abuse its discretion in so deciding. Further, the fee awarded was reasonable.

## III. CONCLUSION

We affirm the district court.

_____