# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1210

_____

Tamica Shaw

*Plaintiff - Appellant*

v.

The Prudential Insurance Company of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 19, 2013
Filed: June 3, 3014
[Unpublished]

_____

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

In this Employee Retirement Income Security Act ("ERISA") case, Tamica Shaw appeals from the district court's[1] grant of summary judgment in favor of The Prudential Insurance Company of America ("Prudential"). We affirm.

## I.    BACKGROUND

On March 4, 2006, Tamica's husband, Carl Shaw, was killed in a single-vehicle accident in Springfield, Missouri. According to an investigative report, Carl's vehicle went airborne after he crossed over railroad tracks at a high rate of speed, eventually causing him to careen into a building. A subsequent toxicology report revealed that Carl had a blood alcohol level of 0.126% at the time of his death.

Tamica filed a claim with Prudential seeking benefits from an accidental death and dismemberment policy ("AD&D") she had purchased from Prudential through her employer, JPMorgan Chase Bank, N.A. ("Chase"), as part of a group insurance contract. The AD&D policy excluded coverage if a loss resulted from "[a]n accident that occurs while operating a motor vehicle involving the illegal use of alcohol." Based on this exclusion, on June 21, 2006, Prudential denied the claim, indicating that, at the time of his death, Carl had a blood alcohol level exceeding the limit allowed to operate a motor vehicle in Missouri. Tamica appealed the decision in two separate letters to Prudential dated October 2, 2006, and February 7, 2007, arguing that neither the police report nor the certificate of death cited alcohol as a contributing factor in Carl's death.

On March 12, 2007, Prudential upheld its decision to disallow the claim, again relying on the alcohol exclusion. On May 10, 2007, after receiving and reviewing additional records, Prudential revised its denial letter, this time citing a felony

---

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

exclusion in addition to maintaining denial based on the alcohol exclusion. On July 30, 2007, Tamica appealed from this decision. In her appeal letter, Tamica indicated that her letter "serv[ed] as an *appeal* to Prudential's Appeal Review Committee for a final decision relative to Prudential's May 10, 2007, letter denying the payment of life insurance proceeds." On September 28, 2007, Prudential issued its final decision denying the claim. Nearly two years after this denial, Tamica obtained new counsel and pressed Prudential for additional review.

On July 27, 2010, Tamica commenced action in Missouri state court, alleging Prudential breached the AD&D policy. Prudential removed the case to federal court and Tamica sought a remand. Finding that Tamica had alleged ERISA claims, the district court denied remand. Tamica then amended her complaint to include one state law claim and, in the alternative, an ERISA claim. Prudential moved for partial summary judgment on the state law claim. Again, finding that ERISA governed the dispute, the district court granted partial summary judgment in favor of Prudential, dismissing Tamica's Missouri state law claim. Subsequently, the parties filed cross-motions for summary judgment on the remaining ERISA claim. Reviewing Prudential's decision for an abuse of discretion, the district court determined that Prudential's decision was reasonable and supported by substantial evidence and, thus, granted Prudential's motion. Tamica now appeals.

## II.   DISCUSSION

### A.   Standard of Review

Tamica challenges the district court's determination that an abuse of discretion standard applied to Prudential's decision. We review the district court's grant of summary judgment de novo, as well as its determination that Prudential's decision is governed by an abuse of discretion standard. Sahulka v. Lucent Techs., Inc., 206 F.3d 763, 767 (8th Cir. 2000).

-3-

Generally, when an ERISA plan grants the administrator discretionary authority to "make eligibility determinations, the administrator's decision is reviewed for an abuse of discretion." Trs. of Electricians' Salary Deferral Plan v. Wright, 688 F.3d 922, 926 (8th Cir. 2012) (quotation omitted). However, if the ERISA plan fails to grant such authority, we review the administrator's decision de novo. Nichols v. Unicare Life and Health Ins. Co., 739 F.3d 1176, 1181 (8th Cir. 2014).

Tamica asserts three reasons why a de novo standard applied in this case: (1) the specific AD&D policy failed to provide discretionary authority to the Plan administrator; (2) the summary plan description (SPD) and other documents granting discretionary authority are not part of the AD&D policy; and (3) Prudential did not properly amend the AD&D policy to include discretionary authority. We find these related contentions unpersuasive under present circumstances.

Our cases establish a few principles to discern the appropriate standard of review in the type of situation we now confront. We have recognized that "a grant of discretion to the plan administrator, appearing only in a [SPD], does not vest the administrator with discretion where the policy provides a mechanism for amendment and disclaims the power of the summary plan description to alter the plan." Ringwald v. Prudential Ins. Co. of Am., 609 F.3d 946, 948 (8th Cir. 2010) (quotation omitted). Yet, at the same time, we have never held that the discretion-granting language must appear only in the individual welfare policy or SPD to have effect.[2] See McKeehan v. Cigna Life Ins. Co., 344 F.3d 789, 793 (8th Cir. 2003) ("[W]e require explicit discretion-granting language in the policy or *in other plan documents* to trigger the ERISA deferential standard of review.") (emphasis added) (internal quotation omitted)); Rittenhouse v. UnitedHealth Grp. Long Term Disability Ins. Plan, 476 F.3d 626, 629 (8th Cir. 2007) ("The triggering language may appear in a plan document

---

[2]On this point, we fundamentally disagree with Tamica's reading of Jobe v. Medical Life Ins. Co., 598 F.3d 478 (8th Cir. 2010), and Ringwald.

other than the SPD."). Indeed, "an ERISA plan must be inferred from a series of documents," Administrative Committee of Wal-Mart Stores, Inc. v. Gamboa, 479 F.3d 538, 542 (8th Cir. 2007), and in interpreting the terms of the plan, like all contracts, "[c]ourts must look at the ERISA plan as a whole," Johnson v. American United Life Insurance Co., 716 F.3d 813, 820 (4th Cir. 2013). To this end, although in a slightly different context, in Gamboa, we acknowledged the controlling effect of "wrap-plan" documents that "provide[] the governing structure of the overall Plan and describe[] the general procedures for determining participation, funding, administration, and claims under each individual welfare program." 479 F.3d at 542.

Presently, although the individual AD&D policy at issue does not contain discretion-granting language, other Plan documents unambiguously grant such authority. In addition to the individual welfare policies, Tamica's ERISA Plan contains a global document entitled "Health and Income Protection Program for JPMorgan Chase Bank and Certain Affiliated Companies." This wrap-plan document, like in Gamboa, "provides the governing structure of the overall Plan and describes the general procedures for determining participation, funding, administration, and claims under each individual welfare program." Id. Furthermore, the wrap-plan document informs the employee that the ERISA Plan is evidenced by the wrap-plan document itself, as well as the SPDs and the individual insurance policies, among other named documents. Section 4.2 of this document declares that "[b]enefits under the Program or a Plan[3] will be paid only if the Program Administrator or its delegates decides in its discretion that a Participant is entitled to them." Given that this Plan document provides such a clear and explicit grant of

[3]The wrap document defines "Plan" as "any one of the employee benefit plans . . . which is maintained for the benefit of Eligible Employees and their Dependants." "Program" is defined as the "Health and Income Protection Program for JPMorgan Chase Bank and Certain Affiliated Companies," and "references . . . to the Program shall include each individual Plan." Unlike Tamica, given these definitions, we find it insignificant that the wrap document is entitled "Program" instead of "Plan."

discretion, we find it unnecessary to address Tamica's arguments concerning whether the discretion-granting language in the SPDs–incorporated by reference into the wrap-plan document–has any controlling effect. The district court did not err in determining an abuse of discretion standard applied.

## B.    The Administrative Record

Tamica takes issue with materials the district court refused to consider as part of the administrative record. Specifically, because the district court was reviewing Prudential's final decision dated September 28, 2007, the court refused to consider any materials Tamica submitted to Prudential after that date. Tamica argues that she submitted evidence to Prudential after September 28, 2007, including a request for reconsideration; that Prudential considered the evidence in responding to her request for reconsideration before she filed suit; that Prudential submitted these additional materials to the district court as part of the certified record; and that Prudential cited some of these materials in its motion for summary judgment. Thus, in Tamica's view, the district court erred in refusing to consider evidence submitted to Prudential after September 28, 2007.

In reviewing a plan administrator's denial of benefits, courts "consider only the evidence that was before the administrator when the claim was denied." Sahulka, 206 F.3d at 769. In Rittenhouse, we rejected arguments similar to those Tamica now asserts. 476 F.3d at 630-31. There, much like the present case, after the plan administrator issued its final decision, the employee pressed the administrator to reconsider its position and submitted additional evidence. Id. at 630. We concluded the district court abused its discretion in considering the employee's additional evidence submitted to the plan administrator, as the employee offered no explanation why the relevant evidence could not have been submitted before a final administrative decision was rendered. Id. at 631.

We find <u>Rittenhouse</u> controls here and any slight distinctions are without a difference. Tamica has offered no explanation as to why she could not submit all her evidence during the administrative appeals process and waited nearly two years after Prudential issued its final decision to finally submit the evidence to Prudential. Tamica is not entitled to limitless review merely because she decided to switch counsel after her final administrative appeal had been denied. <u>See</u> <u>Davidson v. Prudential Ins. Co. of Am.</u>, 953 F.2d 1093, 1096 (8th Cir. 1992) ("[T]he administrative [review] process must end at some point." (second alteration in original) (quotation omitted)). Therefore, the district court did not abuse its discretion in refusing to consider evidence that Tamica failed to timely submit during the administrative appeals process.

### C.     Conflict of Interest and Procedural Irregularities

Even if the plan documents vest Prudential with discretion, Tamica suggests that the district court failed to consider Prudential's conflict of interest. <u>See</u> <u>Khoury v. Grp. Health Plan, Inc.</u>, 615 F.3d 946, 953 (8th Cir. 2010) ("The existence of a conflict of interest is one factor among many that a reviewing judge must take into account when determining whether a plan administrator has abused its discretion in denying benefits." (internal quotation omitted)). The record belies Tamica's contention. In its order denying her motion for reconsideration, the district court noted that it had considered the conflict of interest but concluded that any potential conflict "did not influence or otherwise override the other factors Prudential considered in denying Plaintiff benefits." We agree with the district court's assessment.

Tamica also complains that Prudential abused its discretion by failing to engage in a full and fair review of her claim because its claim handling process was riddled with procedural irregularities. Several of Tamica's perceived procedural

irregularities seem to stem from her mischaracterization of the record and outright misstatements of law. For example, in one of her many assertions, Tamica claims that "Prudential did not give [Tamica's] contentions fair consideration, and failed to give specific reasons for denying the claim and for not considering critical evidence." A review of the record reveals a different story. In each of its claim denial letters, Prudential gave specific reasons for the denial, cited evidence, and responded to each of Tamica's arguments. In its final decision, Prudential noted that Tamica appealed but failed to provide any additional information for Prudential to review. After thoroughly reviewing the record, we see no abuse of discretion based on procedural irregularities.

## D.    Alcohol Exclusion

As to the merits of the underlying denial, Tamica argues that the district court erred in concluding the alcohol exclusion precluded coverage under the AD&D policy. Because we have determined that an abuse of discretion standard applies, the "administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision." Ratliff v. Jefferson Pilot Fin. Ins. Co., 489 F.3d 343, 346 (8th Cir. 2007) (quotation omitted). A decision is not unreasonable merely because the plan is susceptible to differing interpretations. River v. Edward D. Jones Co., 646 F.3d 1029, 1032 (8th Cir. 2011). "Rather, a court will reverse a claims administrator's determination only if it is arbitrary and capricious." Id. Accordingly, where a plan administrator offers a reasonable explanation for a decision that is supported by substantial evidence–such evidence that a reasonable mind might find adequate to support the conclusion–we will not disturb the decision. Id. at 1033.

Recall, the alcohol exclusion provides that "[a] loss is not covered if it results from . . . [a]n accident that occurs while operating a motor vehicle involving the illegal use of alcohol." Tamica finds several aspects of this provision ambiguous,

namely, the "results from" language, the "illegal use of alcohol" language, and the lack of a named vehicle operator. After reviewing the record and our precedent, we conclude that the plan administrator offered a reasonable interpretation and application of the exclusion to the facts of this case. See id. at 1033 ("We conclude that, based on [the intoxication] exclusion alone, [the plan administrator] did not abuse its discretion as plan administrator when it denied benefits.").

### E.    Substantial Evidence

Tamica also asserts that Prudential's decision is not supported by substantial evidence because "the great weight of the evidence in the record . . . establishes the blood test results are not reliable and that Carl Shaw did not drink alcohol on the night he died." We rejected similar assertions in River. There, we determined that the plan administrator acted reasonably by relying on a "certified toxicology report issued by the Missouri State Highway Patrol Crime Laboratory Division and signed by one of its technicians," which showed the decedent had a blood alcohol level of 0.128%, notwithstanding evidence indicating the decedent was not intoxicated. Id. at 1033 & n.2. Here, the Missouri State Highway Patrol Crime Laboratory Division issued a report indicating Carl's blood alcohol level was 0.126% at the time of the accident. This toxicology report satisfies the substantial evidence standard even if contrary evidence existed. Id. at 1034.

### F.    Toxicology Report

Finally, Tamica challenges the reliability and evidentiary value of the toxicology report because proper procedure was not followed in drawing and testing Carl's blood. After thoroughly reviewing the record, we are satisfied that Prudential acted reasonably in relying on the toxicology report.

## III. CONCLUSION

We affirm the judgment of the district court.

_____