# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1694
_____

Gary L. Williams

*Plaintiff - Appellant*

v.

Unum Life Insurance Company of America

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 16, 2021
Filed: August 24, 2021
_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Does an accidental-death-and-dismemberment insurance policy qualify as "a health plan" under Maine law? Me. Rev. Stat. Ann. tit. 24-A, § 4303. The answer is no, which means that Unum Life Insurance Company's decision to deny benefits

is subject to a deferential abuse-of-discretion standard of review.  Like the district court,[1] we conclude that there was no abuse of discretion.

I.

Kathy Williams died after she fell down a flight of stairs in her Missouri home. According to the death certificate, the cause was an "intracranial hemorrhage" and the manner in which it occurred was an "accident."  (Capitalization omitted).  As it turned out, Kathy's blood-alcohol content was 0.337—more than four times the legal driving limit in Missouri.  *See* Mo. Rev. Stat. § 577.012.1(1).

Several weeks later, her husband Gary submitted a claim to Unum for benefits under an accidental-death-and-dismemberment policy.  After investigating the claim, Unum denied benefits under the policy's intoxication exclusion.  The denial letter pointed out that the "accidental loss[]" in Kathy's case was "caused by, contributed to by, or result[ed] from . . . being intoxicated."  J.A. 175 (quoting the exclusion).  Gary's administrative appeal met a similar fate, with the company writing that "available information support[ed] that [Kathy's] fall (which caused her death) was caused by, contributed to by, or result[ed] from her level of intoxication." J.A. 877.

Having exhausted the policy's administrative process without success, Gary sued Unum in federal court.  *See* 29 U.S.C. § 1132(a)(1)(B).  The district court granted summary judgment to the company on the ground that it had not abused its discretion in denying benefits.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

II.

We review the district court's decision to grant summary judgment de novo. *Tonelli v. United States*, 60 F.3d 492, 494 (8th Cir. 1995). "Summary judgment [was] appropriate [if] the evidence, viewed in [the] light most favorable to [Gary], shows no genuine issue of material fact exists and [Unum was] entitled to judgment as a matter of law." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (quotation marks omitted).

This case presents two issues. The first is whether we owe any deference to Unum's decision. The second is whether the decision survives. On both points, we agree with the district court, which applied an abuse-of-discretion standard to conclude that Unum did not overstep when it denied benefits.[2]

A.

Ordinarily, when an accidental-death-and-dismemberment policy "give[s] the plan administrator . . . discretionary authority to determine eligibility for benefits or to construe [its] terms," we review the "decision . . . under an abuse-of-discretion standard." *Nichols v. Unicare Life & Health Ins. Co.*, 739 F.3d 1176, 1181 (8th Cir. 2014). Under this standard, we will uphold the decision if it is supported by substantial evidence. *See McClelland v. Life Ins. Co. of N. Am.*, 679 F.3d 755, 759 (8th Cir. 2012).

Even though the policy in this case grants discretion, Gary's position is that the rule is different in Maine, which has a statute forbidding "health plan[s]" from conferring "absolute discretion" on plan administrators. Me. Rev. Stat. Ann. tit. 24-

---

[2]We decline to address Gary's argument, raised now for the first time on appeal, that we should ignore the intoxication exclusion because there is no mention of it in the policy's summary-plan description. *See* 29 U.S.C. § 1022(b); *Oil & Gas Transfer L.L.C. v. Karr*, 928 F.3d 1120, 1123 n.2 (8th Cir. 2019) (refusing to consider an argument initially raised on appeal).

A, § 4303, 4303(11)(A). With discretionary clauses "[un]enforce[able]," *id.* § 4303(11)(B), Gary's view is that de-novo review applies instead, *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (requiring de-novo review if there is no applicable discretion-conferring clause).

For Gary's theory to work, an accidental-death-and-dismemberment policy must be "a health plan." Me. Rev. Stat. Ann. tit. 24-A, § 4303. Under Maine law, health plans "provide[] for the financing or delivery of health care services to persons enrolled in the plan, other than a plan that provides only accidental injury . . . coverage," or are "subject to the requirements of the federal Affordable Care Act." Me. Rev. Stat. Ann. tit. 24-A, § 4301-A(7); *see Termorshuizen v. Spurwink Servs., Inc.*, 208 A.3d 415, 419 (Me. 2019) (asking first whether there is "a clear statutory definition").

The first part of the definition is of no help to Gary because the policy does not "provide[] for the financing or delivery of health care services." Me. Rev. Stat. Ann. tit. 24-A, § 4301-A(7). To be sure, it does provide limited physical-therapy benefits, which are typically considered health-care services. *See The American Heritage Dictionary of the English Language* 810 (5th ed. 2016) (defining "health care" as "[t]he prevention, treatment, and management of illness and the preservation of mental and physical well-being"). But it does so only in the event of an accident, which does not count under the statute. *See* Me. Rev. Stat. Ann. tit. 24-A, § 4301-A(7) (excluding "plan[s] that provide[] only accidental injury . . . coverage"). As for the remaining benefits, which consist of cash payouts, none even arguably "provides for the financing or delivery of health care services."

Nor is the policy "subject to the requirements of the federal Affordable Care Act," Me. Rev. Stat. Ann. tit. 24-A, § 4301-A(7), which contains a long list of "excepted benefits," Public Health Service Act § 2791(c), 42 U.S.C. § 300gg-91(c); *see also* Patient Protection and Affordable Care Act § 5000A(f)(3)(A), 26 U.S.C. § 5000A(f)(3)(A) (excluding "benefits . . . described in paragraph (1) of subsection (c) of section 2791 of the Public Health Service Act" from the definition of "minimal

-4-

essential coverage"). Among them is the type of insurance we have here: "[c]overage only for accident[s]." Public Health Service Act § 2791(c)(1)(A), 42 U.S.C. § 300gg-91(c)(1)(A); *see also* Patient Protection and Affordable Care Act §§ 1301–1302, 42 U.S.C. §§ 18021–18022 (defining "essential health benefits package" and "health plan," with reference to section 2791 of the Public Health Service Act).

To summarize, Maine's ban on discretionary clauses singles out "health plan[s]."[3] Me. Rev. Stat. Ann. tit. 24-A, § 4303. With Unum's policy covering accidental death and dismemberment, rather than the delivery or financing of health-care services, the discretionary clause kicks in and we review the plan administrator's decision for an abuse of discretion. *See Nichols*, 739 F.3d at 1181.

### B.

Given that there was plenty of evidence that Kathy was intoxicated when she fell down the stairs, Unum did not abuse its discretion by denying benefits under the policy's intoxication exclusion. From a blood-alcohol level of 0.337 to the opinions of multiple medical experts that a level so high could have led to incoordination and an inability to stand or walk safely, substantial evidence supported Unum's conclusion that intoxication "contributed to" her fall.

The policy itself did not require anything more. Intoxication can "contribute to" a loss without being the only reason it happened. *See American Heritage Dictionary*, *supra*, at 399 (defining "contribute" as "help[ing] [to] bring about"); *see also Kutten v. Sun Life Assur. Co. of Canada*, 759 F.3d 942, 945 (8th Cir. 2014) (noting that "the dictionary definition of [a] word" may be considered in circumstances like these (quotation marks omitted)). Even if other factors played a role in Kathy's death, in other words, Unum still "reasonabl[y]" concluded that

---

[3]There is no question of ERISA preemption here because Maine's law "regulates insurance." 29 U.S.C. § 1144(b)(2)(A).

Kathy's extreme intoxication "contributed to" the fatal injuries she suffered. *See Johnson v. U.S. Bancorp Broad-Based Change In Control Severance Pay Program*, 424 F.3d 734, 738 (8th Cir. 2005) (explaining that a "plan administrator's interpretation" of the policy must be "reasonable").

## III.

We accordingly affirm the judgment of the district court.

_____